IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PNC BANK, NATIONAL                    :
ASSOCIATION, SUCCESSOR TO             :
NATIONAL CITY BANK,                   :
AS LENDER AND AS AGENT                :
FOR LENDERS                           :
                                      :          CIVIL ACTION
        v.                            :
                                      :          NO. 11-7770
DANIEL KANAAN                         :


**SURRICK, J.**                                  **MAY __21__, 2012**

## MEMORANDUM

Presently before the Court is Defendant Daniel Kanaan's Motion to Dismiss Plaintiff's

Amended Complaint for Lack of Personal Jurisdiction and for Improper Venue, or in the

Alternative, to Transfer Venue.  (ECF No. 7.)  For the following reasons, the Motion will be

denied.

## I.      BACKGROUND

### A.      Facts[1]

#### 1.      The Parties

Plaintiff PNC Bank, National Association, Successor to National City Bank, as Lender

and as Agent for Lenders, is a national bank chartered under the laws of the United States.  (Am.

---

[1] In deciding a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the allegations of the complaint are taken as true.  *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).  Similarly, "[i]n considering a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), the court must generally accept as true the allegations in the complaint."  *Fellner v. Phila. Toboggan Coasters, Inc.*, No. 05-2052, 2005 WL 2660351, at *1 (E.D. Pa. Oct. 18, 2005); *see also Kimmel v. Phelan Hallinan & Schmieg, PC*, No. 11-2596, --- F. Supp. 2d ---, 2012 WL 645987, at *4 (E.D. Pa. Feb. 28, 2012).

Compl. ¶ 1, ECF No. 6.)  Plaintiff's home office, as set forth in its Articles of Association, is in

Delaware, and its principal place of business is in Pennsylvania.  (*Id.*)

Defendant is an adult individual residing in Canton, Michigan.  (*Id.* at ¶ 2.)  At all

relevant times, Defendant was a forty-percent shareholder of Advanced Communications, Inc.

("ACI"), a Michigan corporation that provides outsourced business services and which has a

principal place of business in Wayne County, Michigan.  (Mich. Verified Compl. ¶¶ 2, 19-22, 24,

Def.'s Mot. Ex. 7, ECF No. 7.)  Defendant was also the Executive Vice President and Chief

Operating Officer of ACI.  In that capacity, he was responsible for the sales and field operations

of the company.  (*Id.* at ¶ 24.)  Defendant claims that he has never been involved in ACI's

financial reporting.  (*Id.* at ¶ 25.)

At all relevant times, an individual named Michael A. Falsetti was a sixty-percent

shareholder, and President and Chief Executive Officer ("CEO"), of ACI.  In that capacity,

Falsetti was responsible for managing the financial affairs of the company.  (*Id.* at ¶¶ 22-23.)

Falsetti resides in Wayne County, Michigan.  (*Id.* at ¶ 6.)  Defendant claims that Falsetti was

responsible for maintaining ACI's relationships with its lenders and was a key player in the

transaction underlying this lawsuit.  (*See id.* at ¶¶ 92-93, 130-235; Def.'s Br. 6, ECF No. 7.)

2.    *The Loan Documents*

a)    Revolving Credit, Term Loan and Security Agreement

On October 2, 2009, ACI and National City Bank entered into a Revolving Credit, Term

Loan and Security Agreement.  (Am. Compl. ¶ 10 & Ex. B ("Revolv. Credit Agreement").)

Pursuant to this Agreement, National City Bank agreed to lend to ACI certain advances and ACI

agreed to repay those advances in accordance with the Agreement's terms.  (Am. Compl. ¶ 11

(citing Revolv. Credit Agreement §§ 2.6, 2.7).)  National City Bank also agreed to issue Letters of Credit to ACI, subject to certain conditions.  (Am. Compl. ¶ 12 (citing Revolv. Credit Agreement §§ 2.9-2.12).)  This Agreement was signed by Falsetti in his capacity as CEO and President of ACI.  (Revolv. Credit Agreement.)

b)      Revolving Credit Note

Also on October 2, 2009, ACI and National City Bank executed a Revolving Credit Note. (Revolv. Note, Am. Compl. Ex. C.)  Pursuant to the terms of the Note, ACI agreed to pay Plaintiff at the end of the term or earlier, as provided in the Revolving Credit, Term Loan and Security Agreement, the lesser of the principal sum of $27 million or a lesser sum as provided in that Agreement.  (*Id.*; Am. Compl. ¶ 13.)  Falsetti signed this Credit Note in his capacity as CEO and President of ACI.  (Revolv. Note.)

c)      Term Loan Note

In addition, on October 2, 2009, ACI executed a Term Loan Note.  ACI agreed to pay Plaintiff $1 million or a lesser sum, as provided in the  Revolving Credit, Term Loan and Security Agreement.  (Am. Compl. ¶ 14 & Ex. D ("Loan Note").)  Falsetti signed this Loan Note in his capacity as CEO and President of ACI.  (Loan Note.)

d)      The Guaranty

On October 2, 2009, National City Bank, Defendant and financial institutions that became lenders entered into a Guaranty and Suretyship Agreement ("Guaranty").  (Guaranty, Am. Compl. Ex. A.)  Defendant agreed to guarantee and become the surety for the prompt payment and performance of the Obligations assumed in connection with the Guaranty.  (*Id.* at ¶ 1.)  The "Obligations" included:

(i) any and all loans (including, without limitation, all Advances and the Term Loan, advances, debts, liabilities, obligations, covenants and duties) owing by any Borrower . . . to Lenders, Agent or National City Bank under this Agreement, the Other Documents . . . and (ii) any and all loans (including without limitation, all advances, debts, liabilities, obligations, covenants and duties) owing by any Borrower . . . to National City Bank of any kind or nature, in each case whether present or future (including any interest or other amounts accruing thereon, and any costs and expenses arising therefrom of any Person payable by Borrower and any indemnification obligations payable to Borrower . . . arising or payable after maturity, or after the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceeding relating to any Borrower . . . whether or not a claim for post-filing or post-petition interest or other amounts is allowable or allowed in such proceeding), whether or not evidenced by any note, guaranty or other instrument, whether arising under any agreement, instrument or document, (including this Agreement and the Other Documents) whether or not for the payment of money, whether arising by reason of an extension of credit, opening of a letter of credit, loan, equipment lease or guarantee, under any interest or currency swap, future option or other similar agreement, or in any other manner, whether arising out of overdrafts or deposit or other accounts or electronic funds transfers (whether through automated clearing houses or otherwise) or out of the Agent's or any Lenders non-receipt of or inability to collect funds or otherwise not being made whole in connection with depository transfer check or other similar arrangements, whether direct or indirect (including those acquired by assignment or participation), absolute or contingent, joint or several, due or to become due, now existing or hereafter arising, contractual or tortious, liquidated or unliquidated, regardless of how such indebtedness or liabilities arise or by what agreement or instrument they may be evidenced or whether evidenced by any agreement or instrument, including, but not limited to, (i) any and all of Borrower's Indebtedness and/or liabilities under this Agreement or the Other Documents or under any other agreement between National City Bank and any Borrower and any amendments, extensions, renewals or increases . . . and (iii) all costs and expenses of Agent, any Lender, or of any other direct or indirect subsidiary or affiliate of Agent or any Lender, incurred in the documentation, negotiation, modification, enforcement, collection or otherwise in connection with any of the foregoing, including but not limited to, reasonable attorneys' fees and expenses and all obligations of any Borrower . . . to Agent, Lenders or to any other direct or indirect subsidiary or affiliate of Agent or any Lender, to perform acts or refrain from taking any action.

(Am. Compl. ¶ 19 (citing Revolv. Credit Agreement § 1.2).)  The Guaranty defined an "Event of Default" to include ACI's failure to comply with financial covenants and failure to deliver certain financial projections upon which the revolving line of credit amounts were based.  (Am. Compl.

-4-

¶ 20.)  Plaintiff alleges that Defendant "unconditionally guaranteed" all of ACI's obligations under the Revolving Credit, Term Loan and Security Agreement, and is obligated to repay all of those obligations, without further notice, upon Plaintiff's demand.  (*Id.* at ¶ 21.)

> Paragraph 19 of the Guaranty states, in relevant part:
>
> This Guaranty and any other instrument, document or agreement executed or delivered in connection herewith or the transactions related hereto or thereto, and all matters relating hereto and arising herefrom (whether arising in tort, contract law or otherwise), in each case, whether now existing or hereafter arising, shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania applied to contracts to be performed wholly within the Commonwealth of Pennsylvania.  Any judicial proceeding brought by or against Guarantor with respect to any of the Obligations, this Guaranty, any of the Other Documents or any related agreement may be brought in any court of competent jurisdiction in the Commonwealth of Pennsylvania, United States of America, and, by execution and delivery of this Guaranty, Guarantor accepts for itself and in connection with its properties, generally and unconditionally, the non-exclusive jurisdiction of the aforesaid courts, and irrevocably agrees to be bound by any judgment rendered thereby in connection with this Guaranty.
>
> . . .
>
> Nothing herein shall affect the right to serve process in any manner permitted by law or shall limit the right of Agent or any Lender to bring proceedings against Guarantor in the courts of any other jurisdiction.  Guarantor waives any objection to jurisdiction and venue of any action instituted hereunder and shall not assert any defense based on lack of jurisdiction or venue or based upon *forum nonconveniens*.
>
> . . .
>
> Any judicial proceeding by Guarantor against Agent or any Lender involving, directly or indirectly, any matter or claim in any way arising out of, related to or connected with this Guaranty or any related agreement, shall be brought only in a federal or state court located in the County of Philadelphia, Commonwealth of Pennsylvania, provided that the foregoing shall not preclude the Guarantor from bringing a claim or counterclaim action in any court in which Agent or any Lender has initiated a judicial proceeding against Guarantor.

(*Id.* at ¶ 19.)  Defendant signed the Guaranty.  (Am. Compl. ¶¶ 15, 18, 20; *see also* Guaranty.)

National City Bank loaned money to ACI pursuant to the terms of the Revolving Credit, Term Loan and Security Agreement, Revolving Credit Note, Term Loan Note and Guaranty (collectively, "Loan Documents").  (*Id.* at ¶ 17.)

        4.     *ACI's Defaults*

ACI defaulted on the Revolving Credit, Term Loan and Security Agreement.  (*Id.* at ¶ 23.)  Plaintiff claims that pursuant to the terms of the Loan Documents, Defendant is obligated to repay immediately all of ACI's debt obligations.  (*Id.*)

Plaintiff asserts that it has authority to enforce the Loan Documents in light of its merger with National City Bank and the resulting succession to all of its rights under the Loan Documents.  (*Id.* at ¶ 22.)  On July 8, 2010, Plaintiff sent ACI a letter, and copied ACI's and Defendant's counsel.  The letter informed ACI that it was in default of the Revolving Credit, Term Loan and Security Agreement.  (*Id.* at ¶ 24.)  Plaintiff claimed that ACI was in default for its failure to comply with the covenants set forth in Sections 6.5 and 7.6 of the Agreement.  (*Id.*; *see also* July 8 Letter, Am. Compl. Ex. E.)  Section 6.5 requires ACI to "cause to be maintained as of the end of each fiscal quarter, commencing with the fiscal quarter ending October 31, 2009, a Fixed Charge Coverage Ratio of not less than 1.1 to 1 calculated for the trailing twelve month period then ended."  (Am. Compl. ¶ 24 (citing Revolv. Credit Agreement § 6.5).)[2]  Pursuant to

---

[2] The Fixed Charge Coverage Ratio is defined as:

> with respect to any fiscal period, the ratio of (a) EBITDA minus Unfunded Capital Expenditures made during such period, minus distributions (including tax distributions made during such period) and dividends, minus cash taxes paid during such period to (b) all Debt Payments made during such period.

(Am. Compl. ¶ 25 (citing Revolv. Credit Agreement § 1.2).)

Section 7.6, ACI agreed not to "contract for, purchase or make any expenditure or commitments for Capital Expenditures in any fiscal year in the aggregate amount for all Borrowers in excess of $850,000." (Am. Compl. ¶ 26 (citing Revolv. Credit Agreement § 7.6).) Plaintiff claims that ACI is in default "for failing to maintain the requisite Fixed Charge Ratio as required under the Agreement and for making prohibited expenditures and commitments in violation of Section 7.6 of the Agreement." (*Id.* at ¶ 27.)

On June 30, 2010, ACI sent a Compliance Certificate to Plaintiff, which stated, in relevant part, that "[ACI] certifies that it is in compliance with the aforementioned sections of the loan agreement except Section 6.5. Fixed Coverage Ratio is less than 1.0 for the trailing 12 months. [ACI] attributes part of this to year[-]end journal entries being combined into January 2010." (Am. Compl. ¶ 28 (citing Compliance Cert., Compl. Ex. F).)[3]

On March 23, 2011, Plaintiff sent ACI a letter stating that the defaults identified in the July 8, 2010 letter had continued, that ACI failed to deliver its projections for the fiscal period ending January 31, 2012 as required by the Revolving Credit, Term Loan and Security Agreement, and that Plaintiff, pursuant to Section 3.1 of the Agreement, was increasing the rate of interest on the obligations to the default rate as defined in the Agreement. (Am. Compl. ¶ 31.) This letter also stated Plaintiff's intent to charge ACI's account $5,000 per day until the earlier of (i) payment in full of the unpaid default interest or (ii) receipt by Plaintiff of the Undelivered

---

[3] In addition, Plaintiff contends that prior to this June 30, 2010 letter, ACI indicated to Plaintiff that it was maintaining a proper Fixed Charge Ratio. Plaintiff asserts that this "erroneous information caused Plaintiff to over-advance several million dollars to [ACI], an amount that was not backed by adequate collateral and which is immediately due and payable to Plaintiff." (Am. Compl. ¶ 29.) This, Plaintiff claims, along with the failure to maintain the Fixed Charge Ratio, constituted "events of default under the Agreement which have not been cured and which continue to date." (*Id.* at ¶ 30.)

Projections in a way that complied with the Agreement.  (*Id.* at ¶ 32.)  Plaintiff asserts that it has loaned to ACI a total of $25,737,939.32 under the Revolving Line of Credit, $1,258,344.77 in Letters of Credit, and $1 million under the Term Loan, of which $277,777.72 remains outstanding.  (*Id.* at ¶ 33.)

5.    *Alleged Basis for Jurisdiction and Venue*

Plaintiff alleges subject matter jurisdiction based upon diversity.  (*Id.* at ¶ 3.)  It alleges that this Court has personal jurisdiction over Defendant since he "has expressly consented to personal jurisdiction and has waived any objections to personal jurisdiction in this Court under the provisions of the Guaranty signed by Defendant that is the subject of this lawsuit."  (*Id.* at ¶ 6.)  In addition, Plaintiff alleges that venue is proper since "a substantial part of the events or omissions giving rise to the claim occurred in [the Eastern District of Pennsylvania]" (*id.* at ¶ 4) and Defendant "has expressly consented to venue in this Court and has waived any and all objections to venue, under the provisions of the Guaranty signed by Defendant that is the subject of this lawsuit" (*id.* at ¶ 5).[4]

**B.    Procedural History**

On December 21, 2011, Plaintiff filed a Complaint.  (ECF No. 1.)  The Complaint asserted one count of breach of contract.  (*Id.* at ¶¶ 29-35.)  On March 15, 2012, Defendant filed a motion to dismiss for lack of jurisdiction and for improper venue.  (ECF No. 3.)[5]  On April 3,

---

[4] Plaintiff also alleges that Defendant has waived any objection based on *forum non conveniens* by signing the Guaranty.  (Am. Compl. ¶ 7.)

[5] On that same day, Defendant filed a motion to seal certain exhibits that were filed with the motion.  (ECF No. 4.)  We granted the motion to seal on March 20, 2012.  (ECF No. 5.)  In light of the present Motion, Defendant's March 15, 2012 motion to dismiss for lack of jurisdiction and for improper venue is denied as moot.

-8-

2012, Plaintiff filed an Amended Complaint. (Am. Compl.) Plaintiff added allegations concerning the Paragraph of the Guaranty that dictated the governing law and jurisdiction. (*See id.* at ¶ 8 (citing Guaranty ¶ 19).) The Amended Complaint asserts one count of breach of contract. (Am. Compl. ¶¶ 34-40.) Plaintiff seeks damages and attorneys' fees and costs for this count. (*Id.* at ¶ 40.) On April 17, 2012, Defendant filed the instant Motion to Dismiss Plaintiff's Amended Complaint for Lack of Personal Jurisdiction and for Improper Venue, or in the Alternative, to Transfer Venue. (Def.'s Mot.; *see also* ECF No. 8 (exhibits to Defendant's Motion).) On April 30, 2012, Plaintiff filed a Response in opposition to Defendant's Motion. (Pl.'s Resp., ECF No. 9.)

## II.    DEFENDANT'S MOTION TO DISMISS

### A.    Motion to Dismiss for Lack of Personal Jurisdiction

Defendant argues that the Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) since he lacks sufficient minimum contacts with Pennsylvania. Accordingly, Defendant argues, this Court lacks personal jurisdiction over him. (Def.'s Br. 3.)

Plaintiff argues that Defendant signed a valid and enforceable forum selection clause, in which he consented to this Court's jurisdiction and agreed that venue in Pennsylvania is proper. (Pl.'s Br. 1, ECF No. 9.) Plaintiff asserts that Defendant has failed to show that the forum selection clause was procured with fraud. (*Id.*)

#### 1.    Legal Standard

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361,

368 (3d Cir. 2002)).  If the court does not hold an evidentiary hearing on the motion to dismiss,

the plaintiff "need only establish a prima facie case of personal jurisdiction and the plaintiff is

entitled to have its allegations taken as true and all factual disputes drawn in its favor."  *Id.*

(citing *Pinker*, 292 F.3d at 368).  However, the plaintiff cannot rely on general averments in the

complaint or unsupported statements in its response.  Instead, it must "establish[ ] with

reasonable particularity sufficient contacts between the defendant and the forum state," *Mellon*

*Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (citing *Provident*

*Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)) (internal

quotations omitted); *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 846 F. Supp. 374, 377

(E.D. Pa. 1994), by providing jurisdictional facts supported by affidavits or competent evidence,

*Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984).

Personal jurisdiction may be exercised over an out-of-state defendant only to the extent

permissible by the law of the state in which the district court sits, and then only to the extent that

the exercise of that jurisdiction is consistent with the requirements of the United States

Constitution.  Fed. R. Civ. P. 4(e); *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 698 (3d Cir. 1990)

(holding that a district court may assert personal jurisdiction over a non-resident defendant to the

extent permissible under the law of the state in which the district court sits).

Pennsylvania's long-arm statute allows a court to exercise jurisdiction over a non-resident

defendant "to the fullest extent allowed under the Constitution of the United States and may be

based upon the most minimum contact with this Commonwealth allowed under the Constitution

of the United States."  42 Pa. Cons. Stat. Ann. § 5322(b); *see also Time Share Vacation Club*,

*Ltd.*, 735 F.2d at 63.  Accordingly, the reach of Pennsylvania's long-arm statute is "coextensive

-10-

with the due process clause of the United States Constitution." *Time Share Vacation Club*, 735 F.2d at 63.  The due process clause of the United States Constitution requires a non-resident defendant to have certain "minimum contacts" with the forum state in order for a court in that forum to properly exercise personal jurisdiction.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Personal jurisdiction may be exercised under the theory of general jurisdiction or under the theory of specific jurisdiction.  General jurisdiction may be exercised over a non-resident defendant when the defendant has "continuous and systematic" contacts with the forum state. *Int'l Shoe Co.*, 326 U.S. at 317; *see also Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 588 (3d Cir. 1982) ("If the claim pursued arises from non-forum related activity, the plaintiff must demonstrate that in other respects the defendant has maintained 'continuous and substantial' forum affiliations.").  This Court may assert general jurisdiction over a person when a defendant "is generally present in Pennsylvania, has consented to suit there, or systematically or continuously conducts business in that state."  42 Pa. Cons. Stat. Ann. § 5322 n.3.  Specific jurisdiction may be exercised over a non-resident defendant when "the claim is related to or arises out of the defendant's contacts with the forum."  *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984)).  For specific jurisdiction, the defendant must have "certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co.*, 326 U.S. at 316.  The plaintiff must show that:  (1) there is a "substantial connection" between the defendant and the

forum state, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985);[6] and (2) the exercise of

jurisdiction would not make litigation "so gravely difficult and inconvenient" that the party is

severely disadvantaged, *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972).

> 2.    *General Jurisdiction*

Plaintiff argues that this Court has general jurisdiction over Defendant.  (Pl.'s Br. 6.)  It

points out the fact that Defendant signed the Guaranty, which contains a forum selection clause.

---

[6] Pennsylvania's long-arm statute provides for specific jurisdiction when the cause of action arises from defendant's business transactions within the Commonwealth.  42 Pa. Cons. Stat. Ann. § 5322(a)(1).  Specifically, the statute states that:

> A tribunal of this Commonwealth may exercise personal jurisdiction over a person . . . who acts directly or by an agent, as to a cause of action or other matter arising from such person:

> (1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting business for the purpose of this paragraph:

>> (i) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

>> (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

>> (iii) The shipping of merchandise directly or indirectly into or through this Commonwealth.

>> (iv) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by any government unit of this Commonwealth.

>> (v) The ownership, use or possession of any real property situate within this Commonwealth.

42 Pa Cons. Stat. Ann. §§ 5322(a)(1)(i)-(v).

Plaintiff argues that this clause is valid and enforceable and that Defendant has failed to allege

facts to the contrary.  (*Id.* at 8-10.)

Defendant contends that this Court cannot exercise general jurisdiction over him since

Plaintiff is "unable to make even the slightest allegation that [Defendant] has had any contact

with the Commonwealth of Pennsylvania whatsoever."  (Def.'s Br. 11.)

An individual defendant may consent to personal jurisdiction and venue through forum

selection clauses.  *See, e.g.*, *Provident Mut. Life Ins. Co. v. Bickerstaff*, 818 F. Supp. 116, 120

(E.D. Pa. 1993) (finding insufficient basis to set aside the forum selection provision of

promissory note); *see also* 42 Pa. Cons. Stat. Ann. § 5322 n.3 (noting that general jurisdiction

may be asserted when a defendant "has consented to suit" in Pennsylvania).  This Court has

stated that:

> [a]lthough in the usual case the plaintiff must show that the defendant has sufficient
> minimum contacts with the forum state such that the assertion of personal
> jurisdiction over him comports with the notions of fair play and substantial justice,
> in actions involving forum selection clauses analysis of the contacts with the forum
> state is inappropriate.  Instead, the court must consider the validity and effect of the
> forum selection clause in order to determine if there has been a consent to *in*
> *personam* jurisdiction.

*Bickerstaff*, 818 F. Supp. at 118 (citing *Burger King Corp.*, 471 U.S. at 475; *Int'l Shoe Co.*, 326

U.S. at 320; *Mellon Bank (East) PSFS Nat'l Ass'n*, 960 F.2d at 1222; *Mut. Fire, Marine & Inland*

*Ins. Co. v. Barry*, 646 F. Supp. 831, 832-33 (E.D. Pa. 1986)).

Forum selection clauses are "prima facie valid" and should be enforced unless shown to

be "'unreasonable' under the circumstances."  *M/S Bremen*, 407 U.S. at 10; *Foster v. Chesapeake*

*Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991); *Bickerstaff*, 818 F. Supp. at 118.  A forum

selection clause "should be held unenforceable if enforcement would contravene a strong public

policy of the forum in which suit is brought, whether declared by statute or by judicial

decisions." *M/S Bremen*, 407 U.S. at 16.  Such a clause may be held to be unenforceable if it was

procured through fraud or overreaching.  *Id.* at 15.  The party opposing a forum selection clause

has the heavy burden of proving that the clause should not be enforced.  This burden requires

more than a showing of inconvenience or additional expense.  *Bickerstaff*, 818 F. Supp. at 118;

*see also Cedarbrook Assocs. v. Equitec Sav. Bank*, 678 F. Supp. 107, 108 (E.D. Pa. 1987)

(citations omitted).

      Defendant has not met his burden of demonstrating that the forum selection clause is

unjust, unreasonable or should not otherwise be enforced.  Paragraph 19 of the Guaranty states,

in relevant part:

> Any judicial proceeding brought by or against Guarantor with respect to any of the
> Obligations, this Guaranty, any of the Other Documents or any related agreement
> may be brought in any court of competent jurisdiction in the Commonwealth of
> Pennsylvania, United States of America, and, by execution and delivery of this
> Guaranty, Guarantor accepts for itself and in connection with its properties, generally
> and unconditionally, the non-exclusive jurisdiction of the aforesaid courts, and
> irrevocably agrees to be bound by any judgment rendered thereby in connection with
> this Guaranty.
>
> . . .
>
> Guarantor waives any objection to jurisdiction and venue of any action instituted
> hereunder and shall not assert any defense based on lack of jurisdiction or venue or
> based upon *forum nonconveniens*.

(Guaranty ¶ 19.)  Defendant signed the Guaranty.  Like the defendant in *Provident Mutual Life*

*Insurance Company of Philadelphia v. Bickerstaff*, Defendant argues that he does not and has not

resided in Pennsylvania or had any contact with Pennsylvania.  818 F. Supp. at 119; (Def.'s Br.

11-12).  He argues that he does not own or lease any property in Pennsylvania.  (Def.'s Br. 12.)

Like the defendant in *Bickerstaff*, Defendant points out that "[n]one of the witnesses reside in the Commonwealth of Pennsylvania or within this judicial district" and that as a result, "[l]itigation in this judicial district will be unnecessarily expensive, and burdensome and will be inconvenient for the parties and all witnesses." (*Id.* at 4); *see also Bickerstaff*, 818 F. Supp. at 119.  However, the record does not reveal any evidence suggesting that the forum selection clause was fraudulently obtained, and Defendant has not shown that its enforcement would violate any public policy, or that he would be deprived of his day in court if this action were to continue in this forum.  *See M/S Bremen*, 407 U.S. at 15 (stating that "it would be unrealistic to think that the parties did not conduct their negotiations including fixing the monetary terms, with the consequences of the forum clause figuring prominently in their calculations").  Defendant has not provided a sufficient basis upon which to set aside the forum selection clause at issue.[7]  Accordingly, we will enforce the forum selection clause of the Guaranty.  *See Bickerstaff*, 818 F. Supp. at 120 (denying motion to dismiss for lack of jurisdiction over defendant).

The exercise of personal jurisdiction over a defendant, whether general or specific, must comport with "traditional notions of fair play and substantial justice," such that the parties can "reasonably anticipate being haled into court [in this forum]." *Integral Nuclear Assocs., LLC v. Nair*, No. 05-382, 2005 WL 2012036, at *4 (E.D. Pa. Aug. 19, 2005) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)); *see also Michael Williams Consulting LLC v. Wyckoff Heights Med. Cntr.*, No. 09-4328, 2010 WL 2674425, at *3 ("Regardless of

---

[7] This is not a situation in which the chosen forum is so "seriously inconvenient" that the forum selection clause must be rendered unenforceable. *M/S Bremen*, 407 U.S. at 16.  "We are not here dealing with an agreement between two Americans to resolve their essentially local disputes in a remote alien forum." *Id.* at 17.

whether a court exercises specific or general jurisdiction, it must be established that the

defendant has purposefully directed its activities toward the residents of the forum state, . . . or

otherwise 'purposefully avail[ed] itself of the privilege of conducting activities within the forum

[s]tate, thus invoking the benefits and protections of its laws.'") (citing *IMO Indus., Inc.*, 155

F.3d at 259).  Pennsylvania law explicitly recognizes that general jurisdiction may be asserted

when a defendant "has consented to suit" in Pennsylvania.   42 Pa. Cons. Stat. Ann. § 5322 n.3.

Defendant here has done so by executing, and thereby agreeing to the terms of, the Guaranty,

which contains a valid and enforceable forum selection clause.  By agreeing to be subject to this

Court's jurisdiction, Defendant was on notice that it may "reasonably anticipate being haled into

court" in Pennsylvania.  As noted above, the record shows no indication that any of the

contractual clauses at issue were fraudulently obtained or that enforcement of the forum selection

clause would be contrary to the public policies of this forum.  This Court has enforced forum

selection clauses under similar circumstances.  *See, e.g.*, *De Lage Landen Fin. Servs., Inc. v.*

*Mid-Am. Healthcare LP*, No. 08-1264, 2008 WL 3889996, at *5 (E.D. Pa. Aug. 20, 2008)

(denying motion to dismiss for lack of personal jurisdiction, even though defendants claimed

never to have conducted business or resided in Pennsylvania and that it would be inconvenient

and expensive to litigate this action in Pennsylvania, because there was no evidence suggesting

that the forum selection clauses were fraudulently obtained, that enforcement would violate

public policy, or that defendants would somehow be deprived of their day in court of the action

were to remain in the current forum); *Bickerstaff*, 818 F. Supp. at 120 (enforcing forum selection

clause even though defendant did not conduct business or reside in Pennsylvania and all of his

witnesses resided in California).  Accordingly, the forum selection clause will be enforced, and

we have general jurisdiction over Defendant.

                *3.*      *Specific Jurisdiction*

      Defendant argues that there is no basis for this Court's assertion of specific jurisdiction over him.  He states that he was not involved in the negotiations underlying the loan that formed the basis of the alleged default, did not communicate with National City Bank or Plaintiff in connection with this transaction, and any documents that may be related to the transaction were executed in Michigan, not Pennsylvania.  (Def.'s Br. 12-15.)

      Plaintiff asserts that this purported lack of contact with Pennsylvania is irrelevant.  (Pl.'s Br. 9.)  It emphasizes the existence of the forum selection clause, which it claims cannot be overturned except under extraordinary circumstances.  (*Id.*)

      For the reasons discussed above, we will enforce the forum selection clause contained in the Guaranty.  By executing the Guaranty, Defendant agreed to this Court's jurisdiction.  (*See* Guaranty ¶ 19.)  Defendant has not demonstrated circumstances that would compel us to invalidate the forum selection clause.  Because this Court has general jurisdiction over Defendant, we need not engage in a specific jurisdiction analysis.  *See, e.g., InfoMC, Inc. v. Comprehensive Behavioral Care, Inc.*, No. 10-4907, 2012 WL 1114360, at *9 (E.D. Pa. Mar. 30, 2012) (holding that since the court already determined that it had general jurisdiction over a defendant, it was unnecessary to engage in the specific jurisdiction analysis); *Corporate Aviation Concepts, Inc. v. Multiservice Corp.*, No. 03-3020, 2003 WL 22794693, at *4 n.4 (E.D. Pa. Nov. 13, 2003) ("Because I find that this court has general jurisdiction, it is not necessary to consider the issue of specific jurisdiction."); *see also Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*,149 F.3d 197, 200 (3d Cir. 1998) ("When a state has general jurisdiction over a party, that party can

be haled into court in that state 'regardless of whether the subject matter of the cause of action

has any connection to the forum.'") (citation omitted); *Modern Mailers, Inc. v. Johnson & Quin,*

*Inc.*, 844 F. Supp. 1048, 1051 (E.D. Pa. 1994) ("Personal jurisdiction may be either specific or

general.").

**B.     Defendant's Motion to Dismiss for Improper Venue**

Defendant seeks dismissal of the Amended Complaint under Federal Rule of Civil

Procedure 12(b)(3).  (Def.'s Br. 15.)  Defendant contends that "[t]he existence of a permissive

forum selection clause is not, in and of itself, a sufficient basis to establish that the forum is

proper."  (*Id.* at 16.)  He states that enforcing the forum selection clause would "be so seriously

inconvenient to the parties and the witnesses such that its enforcement would be unreasonable."

(*Id.* at 17.)  He also notes that "little, if any, discovery . . . would take place in Pennsylvania" and

that none of the events giving rise to Plaintiff's claim arose in this District.  (*Id.* at 20.)

Plaintiff contends that Defendant has failed to show that litigating this matter in this

District would offend the interests of justice or would be too inconvenient to the parties and

witnesses.  (Pl.'s Br. 11.)

*1.     Legal Standard*

Rule 12(b)(3) allows a party to dismiss an action for improper venue.  Fed. R. Civ. P.

12(b)(3).  The movant bears the burden of establishing improper venue.  *Myers v. Am. Dental*

*Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982).

The federal venue statute states, in relevant part, that:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship
may, except as otherwise provided by law, be brought only in (1) a judicial district
where any defendant resides, if all defendants reside in the same State, (2) a judicial

district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).  This venue statute does not require that a court determine the "best" forum, *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) (citation omitted), or "the forum with the most substantial events," *Superior Precast, Inc. v. Safeco Ins. Co. of Am.*, 71 F. Supp. 2d 438, 444 (E.D. Pa. 1999).  Indeed, venue may be proper in more than one district. *Id.*

Although venue may be proper in Michigan as Defendant suggests, it is clear that venue is proper in this District in light of the forum selection clause and our determination that Defendants are subject to personal jurisdiction here.  *Quinn v. Worldwide Comm'ns, Inc.*, No. 10-1512, 2011 WL 673748, at *5 (E.D. Pa. Feb. 16, 2011) ("Although venue may be proper in . . . Washington or Colorado as Defendants suggest, it is clear that venue is proper in this District where this Court has determined that Defendants are subject to personal jurisdiction. Accordingly, Plaintiff's Compliant will not be dismissed on the basis of improper venue."); *Bickerstaff*, 818 F. Supp. at 119 ("Where, however, a forum selection clause exists, its effect on the issue of the appropriateness of venue is essentially identical to its effect on the question of jurisdiction.") (citations omitted).  This action will not be dismissed on the basis of improper venue.

## III.   DEFENDANT'S MOTION TO TRANSFER VENUE

In the alternative, Defendant requests that we transfer this matter to the District Court for the Eastern District of Michigan.  (Def.'s Br. 21.)  He claims that the events giving rise to

Plaintiff's claim, as well as "the preparation and submission of erroneous borrowing base history certificates to PNC by various personnel at ACI, all occurred in Michigan." (*Id.*) He claims that Plaintiff "has not alleged a single act other than its own letter writing that occurred in Pennsylvania. (*Id.* at 22.) Defendant argues that litigating the matter in Michigan would be less expensive and more efficient. (*Id.* at 21.) He asserts that the Eastern District of Michigan would have subpoena power over "all of the potential witnesses the parties are likely to call," and the books and records supporting Plaintiff's claim are located there. (*Id.* at 21-22.)

Plaintiff argues that mere inconvenience to Defendant does not provide grounds for transferring this action to Michigan. (Pl.'s Br. 12.) It states that "[t]ravel for Michigan is not so inconvenient as to deprive Defendant of his day in court, and the distance between Michigan and Pennsylvania . . . does not create financial burdens that can overcome a valid forum-selection argument." (*Id.* at 12-13.)

Even though venue is proper in this District, this action may still be transferred to another venue pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *Lempke v. Gen. Elec., Co.*, Nos. 10-5380, 10-5426, 2011 WL 3739499, at *2 (E.D. Pa. Aug. 25, 2011) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995) (stating that Section "1404(a) provides for the transfer of a case where both the original and the requested venue are proper.")) (internal quotation marks omitted). An action may be brought in another district if (1) venue is proper in the transferee district, and (2) the transferee district can exercise personal jurisdiction over the defendants. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970).

District courts have broad discretion in deciding whether to transfer an action for improper venue or inconvenience.  "[T]he plaintiff's choice of forum is entitled to great weight and the burden is therefore on the moving party to justify the transfer."  *Bickerstaff*, 818 F. Supp. at 119 (citing *Leonardo Da Vinci's Horse, Inc. v. O'Brien*, 761 F. Supp. 1222, 1229 (E.D. Pa. 1991); *Nat'l Mortg. Network, Inc. v. Home Equity Cntrs., Inc.*, 683 F. Supp. 116, 119 (E.D. Pa. 1988)); *see also Shutte*, 431 F.2d at 25 (noting that "a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed.").[8]  Nevertheless, a plaintiff's choice of forum "is not always controlling; otherwise Section 1404(a) would be meaningless."  *Bartolacci v. Church of Jesus Christ of Latter Day Saints*, 476 F. Supp. 381, 383 (E.D. Pa. 1979).

The Third Circuit has compiled a list of factors that bear on motions to transfer venue. These factors fall into two categories:  private interests and public interests.  *Jumara*, 55 F.3d at 879.  Private interests include:  (1) both the plaintiff's and defendant's forum preferences; (2) whether the claim arose elsewhere; (3) the convenience of the parties "as indicated by their relative physical and financial condition"; (4) the convenience of the witnesses, but only to the extent that it bears on their availability for trial; and (5) the location of books and records.  *Id.* (citing 1A pt. 2 James W. Moore & Brett A. Ringle, Federal Practice ¶ 0.345[5] (2d ed.1995) & Wright et al. §§ 3847-48, 3854).  Public interests include:

> [E]nforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at

---

[8] By contrast, a defendant's forum preference is typically given considerably less weight than the plaintiff's.  *Blankenship v. Graco Children's Prods., Inc.*, No. 11-4153, 2011 WL 4712419, at *2 n.5 (E.D. Pa. Oct. 6, 2011) (citations omitted).

> home; the public policies of the fora; and the familiarity of the trial judge with the
> applicable state law in diversity cases.

*Id.* at 879-80 (citing Moore & Ringle ¶ 0.345[5] and Wright et al. § 3854) (internal citations

omitted).  Not all factors will apply in a given case, and the court may address other

considerations if pertinent.  Moreover, "[w]ithin this framework, a forum selection clause is

treated as a manifestation of the parties' preferences as to a convenient forum."  *Id.* at 880.

"Although a forum selection clause 'should not receive dispositive weight,' it is 'a

significant factor that figures centrally in [a] district court's calculus.'"  *Sanders-Darigo v.*

*CareersUSA*, No. 11-4050, --- F. Supp. 2d --- , 2012 WL 676995, at *6 (E.D. Pa. Mar. 1, 2012)

(quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Jumara*, 55 F.3d at 880).

Still, the statute demands an "individualized, case-by-case consideration of convenience and

fairness."  *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

### A.     Private Interests

Paragraph 19 of the Guaranty states, in relevant part:

> Any judicial proceeding brought by or against Guarantor with respect to any of the
> Obligations, this Guaranty, any of the Other Documents or any related agreement
> *may be brought in any court of competent jurisdiction in the Commonwealth of*
> *Pennsylvania*, United States of America, and, by execution and delivery of this
> Guaranty, Guarantor accepts for itself and in connection with its properties, generally
> and unconditionally, the non-exclusive jurisdiction of the aforesaid courts, and
> irrevocably agrees to be bound by any judgment rendered thereby in connection with
> this Guaranty.

(Guaranty ¶ 19 (emphasis added).)  This language reflects the parties' agreed-upon forum

preference:  any court of competent jurisdiction in Pennsylvania.  The language "Guarantor

waives any objection to jurisdiction and venue of any action instituted hereunder and shall not

assert any defense based on lack of jurisdiction or venue or based upon *forum nonconveniens*"

-22-

underscores the parties' agreement.  This factor favors retaining this action in this District.  *See Centimark Corp. v. Lavine*, No. 11-0757, 2011 WL 2941214, at *7 (W.D. Pa. July 20, 2011) (holding that the presence of a valid forum selection clause in an employment agreement tipped the balance of factors against transfer).

Defendant claims that the witnesses, books and records relevant to this action are located in Michigan, which makes litigating in that forum more efficient and cost-effective.  However, Defendant has not identified any of these individual witnesses, or any details concerning the testimony that these witnesses would provide.  *See Corporate Life Ins. Co. v. McGhan*, No. 93-0980, 1994 WL 18637, at *7 (E.D. Pa. Jan. 14, 1994) (finding that "[t]he mere declaration that the presentation of the defendants' case will require witnesses for whom the plaintiff's chosen forum would be inconvenient is insufficient to carry the defendants' burden under section 1404(a)") (citing *Bogosian v. Gulf Oil Corp.*, 337 F. Supp. 1230, 1233 (E.D. Pa. 1972); *Bonnell v. Baker*, 331 F. Supp. 1373, 1374 (E.D. Pa. 1971)).

Litigating the action in this Court would be convenient to Plaintiff, which has its principal place of business in Pennsylvania.  It would be less convenient for Defendant, who resides in Michigan.  However, courts have found financial constraints and difficulties litigating in far more distant fora to be inadequate to overcome the "heavy burden" on a litigant seeking to set aside a forum selection clause.  *Beck v. CIT Group/Credit Fin., Inc.*, No. 94-5513, 1995 WL 394067, at *7 (E.D. Pa. June 29, 1995) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594 (1991) (rejecting claim of inordinate inconvenience and cost to Washington State parties of litigating in designated Florida forum); *Bense v. Interstate Battery Sys. of Am.*, 683 F.2d 718, 720 (2d Cir. 1982) (expense of litigating in designated forum insufficient reason not to enforce forum

selection clause); *Druckers, Inc. v. Pioneer Elecs. (USA), Inc.*, No. 93-1931, 1993 WL 431162, at

*2 (D.N.J. Oct. 20, 1993) (financial constraints and difficulty finding California counsel

insufficient reason not to enforce forum selection clause against New Jersey plaintiffs)).  In

signing the Guaranty, Defendant had to appreciate that he might become involved in litigation in

Pennsylvania.  *See id.* (citing *Nat'l Micrographics Sys., Inc. v. Canon U.S.A., Inc.*, 825 F. Supp.

671, 679 (D.N.J. 1993) (party privy to agreement with forum selection clause cannot be surprised

at having to litigate in designated forum); *Druckers*, 1993 WL 431162, at *8 (party to agreement

with forum selection clause and non-party guarantor accepted prospect of litigation in designated

forum)).

      With respect to the remaining private factors, even if Defendant could show that the

claim arose outside of Pennsylvania, and the location of records resides mostly outside of

Pennsylvania, these factors cannot overcome the "'significant factor' that the parties freely

contracted to litigate in Pennsylvania."  *See Sanders-Darigo*, 2012 WL 676995, at *7 (finding

that the forum selection clause remained the strongest indication of the parties' private interests).

Accordingly, the private interests weigh in favor of litigating this action in this District.

### B.    Public Interests

      Defendant has not offered any evidence as to why it would be more difficult to enforce

the judgment of this case in the Eastern District of Pennsylvania than it would be if the case were

decided in the Eastern District of Michigan.  Furthermore, the factor concerning a trial judge's

familiarity with the applicable state law in diversity cases weighs in favor of Plaintiff, since the

Guaranty includes a choice of law provision applying Pennsylvania law.  (*See* Guaranty ¶ 19.)

These factors favor a denial of Defendant's motion to transfer venue.  *See De Lage Landen Fin.*

-24-

*Servs., Inc.*, 2008 WL 3889996, at *8 (finding public factors to weigh against transfer since

defendants did not show why it would be more difficult to enforce the judgment in the Eastern

District of Pennsylvania than in the Eastern District of Missouri and since the contract included a

choice of law provision applying Pennsylvania law).  As discussed above, Defendant has made

no showing that the forum selection clause was unreasonable or unjust, was obtained by fraud or

overreaching, or otherwise violated public policy.  Accordingly, we will deny Defendant's

motion to transfer venue to the Eastern District of Michigan.

**IV.     CONCLUSION**

For the foregoing reasons, Defendant's Motion is denied.

An appropriate Order follows.


**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**

-25-